# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**HUNTINGTON ALLOYS CORPORATION,**
**Employer Below, Petitioner**

**FILED**

September 12, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)   No. 15-0944** (BOR Appeal No. 2050310, 2050311)
(Claim No. 2013017820)

**ASHOK MOTWANI,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Huntington Alloys Corporation, by Steven K. Wellman, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Ashok Motwani, pro se, filed a timely response.

This appeal arises from the Board of Review's Final Order dated August 21, 2015, in which the Board affirmed a March 3, 2015, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges reversed the claims administrator's September 16, 2013, decision denying a request for authorization of surgery and instead, granted authorization. The Board also affirmed a second March 3, 2015, Office of Judges' Order. In its Order, the Office of Judges reversed the claims administrator's June 27, 2013, decision granting a 2% permanent partial disability award and remanded the case for an independent medical evaluation once Mr. Motwani completed appropriate treatment and reached maximum medical improvement. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Motwani, a manager, injured his right shoulder in the course of his employment on January 2, 2012, when he slipped and fell. An MRI taken January 17, 2013, revealed a small fluid collection within the subacromial and subdeltoid bursa that may represent a partial

1

thickness tear of the supraspinatus tendon. The claim was held compensable for shoulder sprain. A right shoulder MRI arthrogram performed on March 14, 2013, showed no evidence of full or partial thickness tear of the rotator cuff. There was evidence of subacromial bursitis but it was minimal and improved since previous MRI.

On April 8, 2013, MarthaWalkup, D.O., performed a record review in which she opined that there was no evidence to support any pre-existing condition or injury to the right shoulder. She stated that the evidence supports the work injury diagnosis as right shoulder subacromial, subdeltoid bursitis. She opined that the maximum expected disability from the injury was forty-two days and any treatment after that time was unreasonable. She stated that according to the disability guidelines, the work injury had healed. No further treatment was reasonable or necessary. Marsha Bailey, M.D., reached a similar conclusion in her May 28, 2013, independent medical evaluation. She opined that it was reasonable to assume Mr. Motwani sustained a simple sprain/strain to his right shoulder as a result of the compensable injury. His chronic right shoulder pain was determined to be largely due to impingement syndrome, subacromial bursitis, and rotator cuff tendonitis, which is very common in a man of his age. Dr. Bailey asserted he had reached maximum medical improvement and exceeded all treatment guidelines. She assessed 2% impairment. The claims administrator granted a 2% permanent partial disability award, based on Dr. Bailey's recommendation, on June 27, 2013. On July 8, 2013, it denied a request for additional physical therapy.

Allen Young, M.D., stated in a July 11, 2013, treatment note that though treatment guidelines expect that the injury should have healed by this point, it has not. Mr. Motwani had no symptoms prior to the injury and still has subacromial bursitis as a result of the compensable injury. He noted that Mr. Motwani reported he continued to work full time but it caused a lot of pain. Dr. Young opined that he had seen many shoulder injuries that required arthroscopy, such as in this case, as prolonged conservative care was not effective. He further opined that Mr. Motwani requires surgery and that such a progression in treatment is standard care.

On August 21, 2013, Jack Steel, M.D., diagnosed subacromial bursitis, impingement syndrome, adhesive capsulitis, and rotator tendinitis. He stated that Mr. Motwani had worsened despite prolonged conservative care. The next step in treatment was arthroscopic evaluation of the shoulder. He opined that Mr. Motwani was not at maximum medical improvement. The claims administrator denied a request for authorization of shoulder surgery on September 16, 2013. Mr. Motwani was treated by Jaideep Iyengar, M.D., in December of 2013. Dr. Iyengar diagnosed right shoulder adhesive capsulitis. He recommended physical therapy and medication. He opined that Mr. Motwani is definitely not at maximum medical improvement.

On December 19, 2013, the Office of Judges reversed the July 8, 2013, claims administrator's decision and granted authorization of additional physical therapy. It found Mr. Motwani was not at maximum medical improvement. Though his injury has not healed as quickly as the treatment guidelines say it should, that does not mean the case should be closed. It stated that the treatment guidelines are merely guidelines and in this case, Mr. Motwani has shown that he requires treatment beyond that normally allowed. The Office of Judges also noted that he may require surgery in the future.

Mr. Motwani was treated by Alex Herzberg, M.D., on March 12, 2014. Dr. Herzberg diagnosed rotator cuff impingement syndrome, adhesive capsulitis, biceps tendonitis, subscapularis strain, and subacromial bursitis. He recommended injections and physical therapy and opined that surgery may be required. Mr. Motwani also treated with Alan Hsu, M.D., in October and November of 2014. Dr. Hsu noted that Mr. Motwani had pain, decreased range of motion, decreased strength, and decreased motor function in his right shoulder. He was started on physical therapy. Dr. Hsu also requested that right shoulder internal impingement be added to the claim.

On March 3, 2015, the Office of Judges reversed the claims administrator's grant of a 2% permanent partial disability award. It determined that Mr. Motwani demonstrated by a preponderance of the evidence that he is not at maximum medical improvement. First, Dr. Young saw Mr. Motwani in July of 2013 and noted that Dr. Bailey had rated his impairment. Dr. Young further noted that Dr. Steel had recommended surgery. Dr. Young explained that the MRI arthrogram did not show an abnormality like the regular MRI because it was performed to look at cartilage. He felt that surgery could allow visualization of the tendon. He concluded that Mr. Motwani was not at maximum medical improvement and that the subacromial bursitis was the result of the compensable injury.

The Office of Judges next found that in August of 2013, Dr. Steel noted that the right shoulder motion had deteriorated and the pain had worsened. He stated that the next step in treatment was arthroscopic evaluation. He opined that Mr. Motwani was not at maximum medical improvement and agreed with Dr. Young's July 11, 2013, report. Finally, Dr. Iyengar determined in December of 2013 that Mr. Motwani was not at maximum medical improvement. The Office of Judges therefore concluded that an abundance of evidence rebuts Dr. Bailey's finding of maximum medical improvement.

In a separate March 3, 2015, Order, the Office of Judges reversed the claims administrator's denial of shoulder surgery and authorized the procedure. It found that the original request for surgery was not in the record but was possibly made by Dr. Steel. It noted that an MRI taken January 17, 2013, showed a possible partial width partial thickness tear of the supraspinatus tendon, which the MRI arthrogram of March 14, 2013, did not show. Dr. Young noted in his report that the arthrogram was to look at cartilage. Dr. Young further noted that the arthroscopy procedure was standard care for this type of injury and that Dr. Steel is a well-respected orthopedist. Dr. Steel stated that he agreed with Dr. Young's report. He asserted the next step was arthroscopic evaluation with debridement or repair of the rotator cuff tear, if noted at the time of surgery.

The Office of Judges further determined that while Dr. Bailey found Mr. Motwani to be at maximum medical improvement and rated his impairment at 2%, the prior Office of Judges Order reversed that decision and found that Dr. Bailey prematurely rated Mr. Motwani. He was not at maximum medical improvement. The Office of Judges in the instant case found the reports of Drs. Young and Steel to be more persuasive than that of Dr. Bailey. The medical review by Dr. Walkup was also found to be unpersuasive. Dr. Walkup did not examine Mr. Motwani and

3

did not review any medical records after the MRI arthrogram was performed. She did however note that the records supported the work injury diagnosis as right shoulder subacromial subdeltoid bursitis.

The most convincing reports of record were found to be those of Drs. Young, Steel, Iyengar, and Herzberg. Drs. Young and Steel both opined in July and August of 2013 that surgery was the next appropriate step. Dr. Iyengar stated on December 4, 2013, that surgery had been recommended but Mr. Motwani wished to pursue conservative treatment. Finally, Dr. Herzberg stated on March 12, 2014, that he may consider arthroscopic surgery and exam after a repeat MRI without contrast. The Office of Judges concluded that the need for surgery had been discussed for quite a while, that Mr. Motwani had attempted conservative treatment, and that he still had not reached maximum medical improvement. It therefore authorized the requested surgery. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Orders on August 21, 2015.

After review, we agree with the reasoning of the Office of Judges and conclusions of the Board of Review. A preponderance of the evidence indicates that Mr. Motwani has not yet reached maximum medical improvement. The need for further treatment, including surgery, was discussed for some time and the determination that Mr. Motwani required surgery was made by several doctors as seen in the reliable medical reports.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: September 12, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

4